IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   10-cv-01278-WYD-MJW

AARON SMALLCANYON,  #135719

Plaintiff,

v.

BEVERLY DOWIS, (PHP) Colorado Dept. of Corrections,
JOANN STOCK, (PHP) Colorado Dept. of Corrections,
KATHLEEN MELLOH, (PHP) Colorado Dept. of Corrections, and
JOHN DOE and JAN DOE 1-10-unknown defendants,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS COMPLAINT
(Docket No. 26)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter is before this court pursuant to an Order of Reference to Magistrate Judge issued by Chief Judge Wiley Y. Daniel on September 29, 2010.  (Docket No. 18).

The operative pleading is the pro se plaintiff's Amended Prisoner Complaint (Docket No. 15) in which plaintiff raises three Eighth Amendment claims that concern medical treatment he received at Sterling Correctional Facility ("SCF").[1]  More specifically, plaintiff alleges the following in three claims for relief.

---

[1] When this action was commenced, plaintiff was incarcerated.  He has since been released on parole.  (See Docket No. 23).

2

**Claim One.**  In Claim One, plaintiff alleges an Eighth Amendment violation, as well as reckless disregard, reckless endangerment, and reckless negligence.  More specifically, he asserts that defendant Beverly Dowis, H.S.A., violated his rights by not having an emergency kite system or sick call at SCF.  On September 17, 2009, plaintiff tried to be seen on an emergency basis by SCF medical by contacting the unit officer, Sergeant Bernhoff, who contacted the Medical Department.  The response was that if it was not life-threatening, it was not an emergency.  Plaintiff notes that sometimes at Medical CO Regina Johnson answers the phone and triages and screens calls and has done so for eight years.  Medical uses the "Milliman Guidelines" to set a standard of care and disregards the AMA guidelines.

The following day, September 18, 2009, plaintiff tried to be seen again, and plaintiff was seen by medical staff due to Sergeant Berhoff contacting two lieutenants.  From that time until October 2, plaintiff was in severe pain, and he was finally seen by an orthopedic specialist, Dr. Porter, who admitted plaintiff to Sterling Regional Hospital.  Dr. Porter discharged plaintiff on October 4, telling plaintiff he had had an adverse reaction to the first antibiotic administered (Cipro), he was to have a follow-up in a week, and he was to let the SCF know immediately if he had reoccurring symptoms.  Plaintiff subsequently told "them"/the "Medical Department" on numerous occasions about his follow-up in one week and that his finger was still showing the same symptoms.  No one in the Medical Department would listen to him.

Defendant "P.A Joann Stock showed deliberate indifference to a serious medical need by not providing medical care which caused [plaintiff] a permanent disfigurement."  (Docket No. 15 at 9, ¶ 15).  "P.A. Kathleen Melloh failed to follow Dr. Porters prescribed

medical treatment as [plaintiff's] medical records will reflect and failed to schedule my follow-up outside medical visits, and put me on Cipro again the ineffective antibotic [sic]. Which by [sic] body had rejected which is why Dr. Porter had prescribed an alternate one. He was my treating physician. This put me in harms way and by not having these orders followed or having them followed could have prevented the osteomilitis." (Docket No. 15 at 9-10, ¶ 16). "P.A. Melloh showed deliberate indifferce [sic] to my medical needs. I am held under the protection and care of the Colorado Department of Corrections and their Assigns, and P.A. Melloh, Beverly Dowis, P.A. Stock were the ones responsible for the medical care, diagnosis, prognosis and treatment plan of plaintiff for any and all medical needs, from life threatening serious to minor as reasonably required." (Docket No. 15 at 10, ¶ 17). "SCF" showed indifference to a serious medical need by not giving proper medical attention which caused a serious medical problem which is chronic and caused plaintiff to have permanent disfigurement. "SCF" failed to schedule his follow-up, which could have prevented the osteomyelitis (a bone infection) and also put him back on Cipro.

**Claim Two.** In Claim Two, plaintiff alleges deliberate indifference and reckless disregard. He claims that Physician Health Partners, which was under contract to provide medical services through personnel employed at SCF, showed deliberate indifference to him from September 17, 2009, until the present by causing his deformed finger. When he was seen by P.A. Stock, she told him he was doing fine after his surgery, but plaintiff told her there was a lot of pain and puss in his wound on his finger, that it was not healing, and that something must be wrong. He told her that his family would be forced to address these matters through legal procedures, and she quipped, "I

4

hope the lawyer you retain is not the same one who put you in here," and she ordered him out of her office. On October 22, an MRI was done to determine if the bone was infected, and there was a black spot on his bone. Plaintiff was sent to D.R.D.C. on October 23 for an ortho consult, began to be seen by the infectious disease clinic, and was placed on IV antibiotics for six to eight weeks. The D.R.D.C. Medical Department decided they needed to see what was causing all of these problems, and they did a biopsy. They removed part of the bone in his left finger on December 12, 2009. He was returned to SCF on January 28, 2010.

**Claim Three.** In Claim Three, plaintiff alleges "Deliberate Indifference/Refusal to Act on Diagnosis. Cruel and Unusual Punishments." (Docket No. 15 at 19). According to plaintiff, "P.A. Stock, P.A. Melloh's negligence is extreme and had no reguard [sic] of following the prescribed medical orders of the treating physician (Specialist, amounting to cruel and unusual punishment." (Docket No. 15 at 19, ¶ 27). In addition,

> Beverly Dowis HSA . . . has violated my rights to equal protection by operating a [sic] inadequate facility. . . . There was no staff trained in rehabilitation. They have no orthopedic staff, they have an emergency room but no staff trained to use it . . . all serious medical needs sent to Sterling Hospital. SCF is understaffed, grossly unqualified and the medical care is of such poor quality one would expect to find it in a 3rd world country. Bedding is so inadequate for people with back and hip ailments as well as those with arthritis and chronic back problems, that it leaves them in agony. But SCF, dose [sic] give adequate bedding to kitchen workers and I-Pod inmates; how is this equal protection under the law? .. When able bodied inmates are given adequate bedding and those with disabilities are not (this is just a primary example of a [sic] unconstitutional act at SCF medical).

(Docket No. 15 at 19, ¶ 28). Plaintiff also claims that he was a welder before he went to prison, but now due to the defendant's negligent acts, he cannot perform that job because his bone got cut and his finger is deformed.

5

Plaintiff seeks declaratory relief, compensatory damages of $10 million against each defendant, and punitive damages in the amount of $10 million against each defendant.

Now before the court for a report and recommendation is the Defendants' Motion to Dismiss (Docket No. 26) which was filed by the three named defendants, Dowis, Stock, and Melloh. Plaintiff did not file a response to the motion. The court has considered the motion, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendation that the motion be granted.

Defendants seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) plaintiff failed to alleged defendants Dowis and Stock personally participated in the alleged constitutional violations, (2) the Complaint fails to state any Eighth Amendment claims, and (3) defendants are entitled to qualified immunity.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016, *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 550 U.S. at 545 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.* The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers). However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged. See Associated Gen. Contractors of Cal., Inc. v. California

State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  "The plaintiff's *pro se* status does not entitle him to application of different rules."  Wells v. Krebs, 2010 WL 3521777, at *2 (D. Colo. Sept. 1, 2010).

**Personal Involvement**

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates.  "[T]here is no concept of strict supervisor liability under § 1983." . . .  "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates.  It does mean that his liability is not vicarious, that is, without fault on his part." . . . .
> 
> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights.  To establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .
> 
> In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation,

8

> namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted).  Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellmon, 935 F.2d at 1110.  Here, defendants assert that the plaintiff failed to allege defendants Dowis and Stock personally participated in the alleged constitutional violations.

Regarding defendant Dowis, the Health Services Administrator ("HSA") at SCF, defendants correctly note that plaintiff merely asserts the following.  In Claim One, plaintiff asserts that Dowis was responsible for his care and treatment and violated his Eighth Amendment rights by failing to have an emergency "kite" or "sick call" system at SCF.  Also, in Claim Three, plaintiff merely asserts Dowis operated an inadequate facility, including the inability to provide emergency medical treatment and failing to have an orthopedic staff at SCF.  Defendants correctly contend that there are no allegations in the Amended Complaint that Dowis directly participated in or even knew about plaintiff's condition or treatment.  This court agrees with the defendants that plaintiff's generalized assertions against Dowis are insufficient to state an Eighth Amendment claim that is "plausible on its face."  Iqbal, 129 S. Ct. at 1948-49.  Naming Dowis as a defendant merely because of her position as HSA is insufficient to state a claim here because plaintiff has not averred an affirmative link between her and the

9

alleged violation.

Furthermore, while plaintiff asserts that there was an inability to provide emergency medical care, as defendants correctly assert, plaintiff asserts that his condition was not initially construed as an emergency when he first reported it on September 17, 2009, which is not the equivalent of failing to have a system in place for inmates to report medical emergencies. Plaintiff's own averments indicate that he was able to contact a corrections officer, who contacted the medical department to report plaintiff's condition. That officer was informed by someone in medical that plaintiff's condition was not an emergency. Plaintiff admits that he was seen the following day by someone in medical. Therefore, the Complaint shows that there was a system for reporting emergency medical conditions.

This court further finds that defendants correctly assert that plaintiff has not alleged the requisite personal involvement by defendant Stock. As noted by defendants, in Claim One plaintiff merely avers that Stock "showed deliberate indifference to a serious medical need by not providing medical care which caused me a permanent disfigurement. He also holds Stock responsible for his care and treatment. In Claim Two, plaintiff asserts that he was seen by Stock, and "she informed me I was doing fine after my surgery." This court agrees with the defendants that plaintiff has failed to state what Stock did or did not do to him which violated his Eighth Amendment rights. His conclusory allegations are insufficient to state an Eighth Amendment claim against defendant Stock.

**Eighth Amendment Claims**

"Medical malpractice does not become a constitutional violation merely because

10

the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A complaint that a defendant "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Id. at 105-06. "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" Self v. Crum, 439 F.3d 1227, 1230 (10th Cir.) (quoting Estelle, 429 U.S. at 106), cert. denied, 549 U.S. 856 (2006). "A prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . . The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, *and* [2] that the Defendants' delay in meeting that need caused him substantial harm. Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d 1272, 1276-77 (10th Cir. 2001) (quotations omitted).

Reading plaintiff's pleadings liberally, accepting all factual allegations in the pleading as true, and resolving all reasonable inferences in the plaintiff's favor, this court finds that plaintiff has not stated an Eighth Amendment claim. Plaintiff asserts that defendant Melloh failed to schedule a follow-up appointment, did not follow the medical treatment prescribed by Dr. Porter, and put him on Cirpro even though plaintiff had had an adverse reaction to it. Attached to the pleading are some grievance forms. One of

the grievance forms is signed by Melloh, who wrote that she discussed plaintiff's case with a doctor at "DRDC" whereby plaintiff was transferred to DRDC for six weeks of IV antibiotics. The other grievances indicate plaintiff received treatment at both SCF and at a hospital. Thus, plaintiff's pleading and the attachments thereto show that he was seen several times in the medical department, at the DRDC, and the hospital, they indicate that plaintiff merely disagreed with the treatment provided by defendant Melloh. A medical difference of opinion, however, is not actionable under the Eighth Amendment. Fitzgerald v. Corrections Corp. of Am., 403 F.3d 1134, 1142 (10th Cir. 2005). See Perkins v. Kansas Dep't of Corr., 165 F.3d 803, 811 (10th Cir. 1999) ("a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"). This court agrees with the defendants that at most the plaintiff alleges negligence on the part of Melloh, which does not constitute deliberate indifference. In sum, this court finds that the plaintiff has not stated an Eighth Amendment claim of deliberate indifference.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss Complaint (Docket No. 26), to which no response was filed, be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need**

12

**not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives** *de novo* **review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: April 18, 2011                                s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                                         United States Magistrate Judge